Moises Garcia MIR, et al., Plaintiffs,

v.

William French SMITH, et al., Defendants,

Bob Graham, Governor of the State of Florida, and State of Florida, ex rel. Jim Smith, Attorney General of the State of Florida, and Jim Smith, Attorney General of the State of Florida, Applicants for Intervention.

Civ. A. No. C81–938A.

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 10, 1981.

---

Deborah Ebel, Dale M. Schwartz, Myron N. Kramer, Ken Hindman, John A. Pickens, Atlanta, Ga., and Frank P. Samford, III, Decatur, Ga., for petitioners.

J. Ken Tucker, Tallahassee, Fla., James E. Hodge, Jacksonville, Fla., Robert A. Peavy, James Skelly Wright, Jr., Washington, D. C., for applicants for intervention.

## ORDER

SHOOB, District Judge.

The State of Florida, its governor, and its attorney general have filed a motion with the Court for leave to intervene as defendants in this action, pursuant to either Fed. R.Civ.P. 24(a) (intervention of right), or Fed.R.Civ.P. 24(b) (permissive intervention). In the event their motion is denied, these applicants for intervention (hereinafter referred to as "Florida") ask for permission to participate in the action as *amici curiae.* Petitioners in this class action oppose the motion; respondents do not. Florida has also filed (1) an answer to petitioners' amended complaint; (2) a request for permission for its attorneys to practice in this case; (3) a memorandum of points and authorities in support of its motion to intervene; and (4) a series of exhibits, A through J. Florida's request for its attorneys to appear *pro hac vice* is in compliance with Local Court Rule 71.4, and has drawn no objections. *See* Local Court Rule 91.2. Accordingly, that request is GRANTED. For reasons set forth below, Florida's motion for leave to intervene is DENIED.

Rule 24 provides:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an

action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Florida argues that it *must* be permitted to intervene under Rule 24(a)(2), or, in the alternative, that it *should* be permitted to intervene pursuant to Rule 24(b)(2). Thus, Florida makes no contention that any statute of the United States confers on it either a conditional or an unconditional right to intervene, Rule 24(a)(1), (b)(1).

Before addressing the merits of Florida's motion, it is worthwhile to review the nature of these consolidated cases. Petitioners are members of a class of "all Cuban nationals who are presently incarcerated at the Atlanta Federal Penitentiary or who will be incarcerated there, and who arrived in the United States from Cuba as part of the 'Freedom Flotilla' in 1980." They brought this suit in order to gain their release from prison on parole through the writ of habeas corpus, and, by amendment to the complaint, to secure an order from this Court restraining the government from returning any of them to Cuba. Florida has an interest only in the former issue, not the latter, since even if permanent injunction issued, Florida would be affected only if the petitioners were also released from custody.

1. Rule 24(a)(2), Intervention of Right. In order to intervene as of right, Florida must meet each of four requirements. First, its application must be timely.

Second, it must have an interest relating to the property or transaction which is the subject of this action. Third, the State of Florida must show that it is so situated that the disposition of the action may as a practical matter impair or impede Florida's ability to protect that interest. Fourth, Florida must show that its interest is not adequately represented by existing parties. Because the Court concludes that Florida's showing fails on the second and fourth requirements, the Court will not address the timeliness of Florida's application or the question whether the resolution of this suit will impair Florida's interest.

(a) *Florida's interest in the case.* The Court is not completely certain whether Florida's interest is (a) that *no* detainee class members *at all* be settled in Florida, or (b) that only properly screened, releasable and sponsored detainees be settled in Florida.[1] The Court assumes Florida's interest to be the latter, and understands that Florida wishes to become involved in the process of screening detainees for possible release, and to ensure that released detainees have extremely reliable sponsors.

In order to prevail on its motion for intervention of right, Florida must demonstrate a " 'direct, substantial, legally protectable interest in the proceedings.' *Hobson v. Hansen*, D.D.C.1968, 44 F.R.D. 18, 24." *Diaz v. Southern Drilling Corporation*, 427 F.2d 1118, 1124 (5th Cir. 1970). This action, in its most essential aspects, is a habeas corpus action. The purpose of the writ of habeas corpus is to test the legality of the petitioner's detention, *Black's Law Dictionary*, page 638 (5th ed. 1979). It is a legal contest between the jailer and the jailed. The State of Florida has failed to cite the Court even a single habeas case in which the intervention of another defendant, arguing that confinement is lawful, has been permitted.[2] Florida is not the custodian of

---

1. What *is* certain is that Florida is unhappy that over 80,000 of the Boatlift Cubans have been "dumped" in Florida, straining Florida's social services and, it is alleged, increasing the crime rate in South Florida. There is nothing that this Court can do about those complaints.

2. The Court has found one such case on its own, *Lawrence v. Elsea*, 478 F.Supp. 480 (W.D. Wis.1979), but the facts in that case are wholly inapposite. In *Lawrence*, the question was not whether or not petitioners were to be released, but whether they were to be held in state or federal custody. The state Commissioner of

any petitioner. The only real parties in interest are the petitioners and federal respondents. Once this Court determines, or the government agrees, that a petitioner is being unlawfully detained, he is free to go;[3] Florida's interest is far too remote to keep any person in jail simply because Florida is not satisfied that a detainee won't travel to Florida and commit a crime. Suppose other states take the same position as Florida and move for leave to intervene as defendants? Would Florida contend that a detainee who is otherwise entitled to his freedom should remain in prison because there is no place to go?

■ In the most nearly analogous case to the unique case before this Court, the Attorney General of Alabama sought a stay from Justice Powell, as Circuit Justice for this Circuit, of an order releasing some 400 prisoners from Alabama prisons due to overcrowding. The Attorney General tried to intervene and secure a stay to prevent irreparable injury to the people of the State of Alabama. He did so despite the fact that the governor of Alabama opposed the Attorney General's appearance in the case and despite the fact that the governor had previously been appointed the receiver for the Alabama prison system. Justice Powell concluded that the Attorney General of Alabama lacked standing to seek the relief sought, and denied his motion for a stay. *Graddick v. Newman*, —— U.S. ——, 102 S.Ct. 4, 69 L.Ed.2d 1015 (1981). This Court likewise concludes that Florida has no standing to interpose its interest in this class action habeas case.

(b) *Adequate representation.* This Court has no doubt whatsoever that any interest Florida may have in the careful screening of detainees before release is being *zealously* protected by federal respondents. A brief review of the file clearly supports that determination. What is more, Florida does not possess the expertise in the screening of aliens possessed by respondent Immigration and Naturalization Service. How Florida could represent its 'interest' in this case more adequately than the federal respondents are doing is a matter of sheer speculation.

Florida also alleges that its interest is somewhat different from and adverse to the federal respondents' interests. In support, Florida cites the Court to incidents involving other aliens in Florida. These allegations are apparently the subject of another lawsuit, *see* Florida's brief at page eight, and have no relevance to this lawsuit. Florida's dispute with the federal government's general handling of large numbers of aliens in Florida cannot be decided by this federal district court in Atlanta.

Florida's motion to intervene as of right is DENIED.

■ 2. Rule 24(b)(2), Permissive Intervention. Three requirements must be met for permissive intervention: (1) a timely application; (2) Florida's claim and the main action must have a common question of law or fact; and (3) Florida's intervention must not unduly delay or prejudice the adjudication of the rights of the original parties. Because this Court concludes that Florida's intervention would both delay and prejudice the adjudication of petitioner's rights, Florida's motion for permissive intervention is DENIED.

(a) *Delay.* This class action/habeas case is novel and complex. It has moved very rapidly since June of this year; the original files of the three consolidated cases are approaching a total thickness of one foot. The issues have been narrowed considerably. A number of agreements have been reached and the Court notes a degree of cooperation among the parties which did not initially exist. There is no doubt in the Court's mind that the presence of a third party would slow the proceedings considerably.

Corrections was permitted to intervene under Rule 24(a)(2).

**3.** The petitioners (through their counsel), the government and this Court have agreed, since petitioners speak little or no English, are indigent and are unfamiliar with life in this country, that no petitioners will be released without sponsors. *But see* the final paragraph of this order, below.

(b) *Prejudice.* Florida's motion to intervene as a defendant in this case has already prejudiced petitioners. Florida chose to show its interest in the matter largely by collecting crime statistics on the over 80,000 Boatlift Cubans who have settled in South Florida. Despite the irrelevance of this material to this case and the inappropriateness of its introduction,[4] the material prejudices public opinion further and makes it more difficult for the resettlement agencies to find sponsors for those detainees who should be released. Prejudice of this sort—extra weeks or months in the Atlanta Penitentiary—as a result of inflammatory charges against Cuban refugees *generally*, is immeasurable. This Court fully recognizes that there may be many detainees who should not be released.

Florida's motion for permissive intervention is DENIED.

### CONCLUSION

 Florida's motion to intervene either as of right or as a permissive intervenor, is DENIED. Florida has no protectable legal interest in this habeas case, and this is not the proper forum for an airing of Florida's grievances against the government. The Court is fully aware of Florida's great concern that reliable sponsors be found for those detainees who are released, particularly those detainees who resettle in Flori-

da.[5] Accordingly, to the limited extent that Florida wishes to assist the resettlement agencies in securing reliable sponsors for detainees who are to be released, Florida's request to participate as *amicus curiae* is GRANTED. In all other respects, Florida's motion is DENIED. Exhibits C through J to Florida's motion are STRICKEN from the record.

---

4. Florida does not claim that any of the crime information it has marshalled, Exhibits C through J, has anything to do with any of the petitioners in this case. That being so, the information does not bear on the issue of whether petitioners are being legally detained or any other issue of consequence to the determination of the action. These exhibits thus suffer from the twin vices of immateriality and irrelevance, *McCormick on Evidence,* pages 434–35 (2d ed. 1972), and accordingly the Court, on its own motion, STRIKES Exhibits C through J to Florida's motion to intervene.

Even if the State of Florida intended by the stricken exhibits to prove that the Freedom Flotilla Cubans are more prone to commit crime than the general population, it has failed to do so. Florida has made a showing that crime generally in South Florida has increased, and that some of it has been committed by the Mariel refugees. But an influx of virtually any large group of people into any city would result in a crime increase. Florida has shown no

comparative data tending to show that these recent Cuban refugees commit any more crime than other residents of Florida.

Even if Florida could produce such statistics, the position it would take would still be unworthy of consideration by a court of law. It would be asking this Court to deny detainees their freedom because other Cubans have committed crimes. This is the opposite of the American principle that persons are 'innocent until proven guilty.' This logic would lead to a life sentence for every person convicted of crime, because other people released from jail on parole commit crimes at a higher rate than the general population.

5. The percentage of released detainees who resettle in Florida may be lower than Florida estimated. Of the first 49 detainees released by court order, only 9 resettled in Florida. Petitioners' Brief in Opposition to the Motion to Intervene, page 7.