MASSACHUSETTS ASSOCIATION OF AFRO–AMERICAN POLICE, INC., et al., Plaintiffs, Appellees,

v.

The BOSTON POLICE DEPARTMENT, et al., Defendants, Appellees.

Appeal of BOSTON POLICE DETECTIVES BENEVOLENT SOCIETY.

No. 85–1453.

United States Court of Appeals, First Circuit.

Argued Nov. 14, 1985.

Decided Dec. 20, 1985.

Regina L. Quinlan, Boston, Mass., for appellant.

Jonathan M. Albano with whom John F. Adkins, Bingham, Dana & Gould, and Barbara Arnwine, Boston, Mass., were on brief for appellee Massachusetts Ass'n of Afro-American Police, Inc.

Leonard G. Learner, Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief for appellee Dept. of Personnel Admin.

Before COFFIN and BREYER, Circuit Judges, and WYZANSKI,* Senior District Judge.

BREYER, Circuit Judge.

A group of Boston police officers appeal the district court's denial, 106 F.R.D. 80, of their motion to intervene in *Massachusetts Association of Afro-American Police, Inc. (MAAAP) v. The Boston Police Depart-*

* Of the District of Massachusetts, sitting by desig-    · nation.

*ment,* Civ. Action No. 78–529McN (*filed* March 2, 1978), a case in which black police officers attacked the Boston Police Department's promotion practices as illegally discriminatory. *See* Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (as amended). The appellants sought intervention in order to attack the *MAAAP* consent decree, entered in 1979, which contained various affirmative action provisions designed to increase the number of black officers promoted to sergeant. Appellants' motion to intervene rests upon their claim that the law has changed significantly since the decree was entered. They believe that the recent Supreme Court case of *Firefighters' Local Union No. 1784 v. Stotts,* 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984), now makes clear that Title VII court decrees that require an employer to favor minority over nonminority employees are unlawful, unless the favored employees themselves had been previous, actual victims of illegal discrimination.

We recently considered, and rejected, this same claim in a similar case with a similar decree imposing similar affirmative action promotion requirements upon the Metropolitan District Commission (MDC)—another Boston area law enforcement agency. *Deveraux v. Geary,* 765 F.2d 268 (1st Cir.1985). The dispositive legal question before us now is whether this case differs significantly from *Deveraux.* The only distinguishing feature to which appellants point is the fact that the consent decree in *Deveraux* contained a stipulation that the MDC had previously violated Title VII, while here the Boston Police Department made no such concession. We find that this distinction is not determinative.

We listed several reasons in *Deveraux* for believing that *Stotts* did not make the decree's affirmative action requirements unlawful: 1) The *Stotts* decree directly conflicted with "a bona fide seniority ... system," 42 U.S.C. § 2000e–2(h); the *Deveraux* decree did not. 2) The *Stotts* district court had ordered changes to the decree over a party's objection; the *Deveraux* district court simply enforced the original terms of a decree to which all parties had

voluntarily agreed. 3) The *Stotts* decree changes (being involuntary) fell outside the scope of *United Steelworkers of America v. Weber,* 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979) (holding that Title VII does not forbid private employers from voluntarily entering into affirmative action plans to eliminate manifest racial imbalance); the *Deveraux* decree provisions, at least arguably, were more like those which *Weber* protected. 4) As appellants correctly point out, we also said that in *Stotts* the defendant had not admitted prior Title VII violations, while in *Deveraux* the MDC had. Our rereading of *Deveraux,* however, convinces us that this final distinction (which we there called "a further distinction,") is not necessary to the result.

For one thing, the first three distinctions are strong ones. For another thing, the cases from other circuits which we relied upon in reaching the *Deveraux* result, for the most part do not rely upon the fourth distinction. *See Vanguards of Cleveland v. City of Cleveland,* 753 F.2d 479, 486–87 (6th Cir.1985), *cert. granted sub nom. Local No. 93, International Ass'n of Firefighters, AFL–CIO v. City of Cleveland,* —— U.S. ——, 106 S.Ct. 59, 88 L.Ed.2d 48 (1985); *Diaz v. American Telephone and Telegraph,* 752 F.2d 1356, 1360 n. 5 (9th Cir.1985); *Van Aken v. Young,* 750 F.2d 43, 45 (6th Cir.1984); *Wygant v. Jackson Board of Education,* 746 F.2d 1152, 1157–58 (6th Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 2015, 85 L.Ed.2d 298 (1985); *Kromnick v. School District of Philadelphia,* 739 F.2d 894, 911 (3d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985); *cf. EEOC v. Local 638,* 753 F.2d 1172, 1186 (2d Cir.) *cert. granted sub nom. Local 28 of Sheet Metal Workers' International Ass'n v. EEOC,* —— U.S. ——, 106 S.Ct. 58, 88 L.Ed.2d 47 (1985); *Grann v. City of Madison,* 738 F.2d 786, 795 n. 5 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 296, 83 L.Ed.2d 231 (1984).

Finally, here and in *Deveraux,* the underlying cases involved a *complaint* of Title VII violation; a *voluntary settlement* of the complaint; and a *consent decree* that

(arguably) favors minority employees not themselves actual victims of discrimination. While we are aware of the continuing legal argument about 'affirmative action,' *Wygant v. Jackson Board of Education, supra, (cert. granted); Vanguards of Cleveland v. City of Cleveland, supra, (cert. granted); EEOC v. Local 28, supra, (cert. granted)*, we are not aware of any convincing legal theory that would resolve that argument on the basis of whether the parties had bothered to negotiate an 'admission' as part of their consensual settlement of the suit. Thus, we find *Deveraux* dispositive of the present appeal.

Appellants have asked us to wait to decide this appeal until the Supreme Court has decided *Wygant, supra.* We decline to do so. A delay to await clarification of the law could be lengthy, for *Wygant* may not be dispositive of this, rather different, affirmative action provision. And, the Court has before it other requests to review affirmative action in cases not yet briefed or argued. At the same time, delay could inhibit efforts by the Boston Police Department to implement a nondiscriminatory promotion examination, developed as a result of other, related portions of the decree; it would make more difficult the Department's administrative tasks; and it could injure those who might be promoted under any lawful employment system. Under these circumstances, we believe it appropriate simply to apply what is existing law in this circuit.

The judgment of the district court is *Affirmed.*