United States Court of Appeals,

Fifth Circuit.

No. 97-50102.

SAVE OUR SPRINGS ALLIANCE INCORPORATED; Mark Kirkpatrick, Dr.,
Plaintiffs-Appellees,

v.

Bruce BABBITT, Secretary of the Department of the Interior,
Defendant,

State of Texas, Movant-Appellant.

June 23, 1997.

Appeal from the United States District Court for the Western
District of Texas.

Before JOLLY, DUHÉ and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this case, the State of Texas appeals the district court's denial of its motion to intervene in ongoing litigation between an environmental group and the U.S. Fish and Wildlife Service concerning the proposed listing of the Barton Springs Salamander as an endangered species under the Endangered Species Act, 16 U.S.C. § 1531 *et seq.*

Following a previous lawsuit concerning the Salamander, various Texas agencies and the U.S. Fish and Wildlife Service entered into a Conservation Agreement designed to study potential threats to the Salamander and to protect its habitat. The Fish and Wildlife Service subsequently withdrew its proposed listing of the Salamander. Plaintiff Save Our Springs Alliance filed suit on October 29, 1996, against Bruce Babbitt, U.S. Secretary of the Interior, challenging the Secretary's action in withdrawing the

1

proposed listing.

As the district court specifically found, various Texas agencies and the Texas Attorney General's office were served with courtesy copies of the complaint. On November 18, the plaintiffs moved to expedite briefing. The district court granted this unopposed motion on December 12, and also granted the Secretary's motion to limit review to the administrative record. The case would therefore be determined solely on the basis of briefs filed in cross-motions for summary judgment.

On January 23, 1997, one day before initial briefs were due, the State of Texas moved to intervene, and included a proposed answer raising various affirmative constitutional defenses that would likely require discovery outside the administrative record. Although Texas indicated in its motion to intervene that it would also file a brief as *amicus curiae,* it never did so. Nor did Texas file briefs as a party pending the court's decision on its motion to intervene. On February 7, the district court denied Texas' motion to intervene, principally on the ground that it was untimely, and Texas now appeals.

"We review the district court's finding of timeliness for abuse of discretion and the other requirements [of intervention] *de novo.*" *Sierra Club v. Glickman,* 82 F.3d 106, 108 (5th Cir.1996) (*citing Sierra Club v. Espy,* 18 F.3d 1202, 1205 & n. 2 (5th Cir.1994)). There are several factors that are relevant to the determination whether an application to intervene is timely, including: (1) the length of time the proposed intervenor knew or

should have known of its interest in the case, (2) the extent of the prejudice that existing parties may suffer by the proposed intervenor's delay in moving to intervene, (3) the extent of the prejudice that the would-be intervenor would suffer if intervention is denied, and (4) any unusual circumstances that bear upon the timeliness of the application. *Espy,* 18 F.3d at 1205.

Texas delayed nearly three months before filing its motion to intervene, waiting until the very day before initial briefs were due. Although the absolute measure of time elapsed is not relevant, *Espy,* 18 F.3d at 1205, under the circumstances of this case, the three months between the filing of the complaint and the date on which opening summary judgment briefs were due is too long a delay. Texas offers a list of reasons why it is interested in the litigation and complains that the Secretary is not adequately defending the Conservation Agreement. But these considerations cannot sustain Texas' argument in view of its failure to timely file its motion. Much more to the point here, Texas has offered no plausible explanation for waiting to file its motion until the very last day before initial briefs were due.

Texas argues that the timeliness of its application should be measured from the time that Texas became aware that the Fish and Wildlife Service would not adequately represent its views, which, it claims, was not until after it had fully reviewed the lawsuit. Yet the cases cited by Texas are cases in which some independent identifiable event—such as the issuance of a preliminary injunction—provides a reason for measuring timeliness from sometime

3

other than the date upon which the would-be intervenor became aware of the suit. *See, e.g., Espy,* 18 F.3d at 1205.

Texas has not identified such an independent event from which we might measure the timeliness of its application to intervene. In fact, Texas has not offered *any* reasonable explanation for its three-month delay. Texas argues that the Fish and Wildlife Service cannot adequately represent its interests because only Texas can fully protect its own regulatory scheme, and because it intends to challenge the constitutionality of the Endangered Species Act. This criticism of the Fish and Wildlife Service's ability to represent Texas' interests may be accurate, but it does nothing to explain the delay. The facts that Texas itself is most knowledgeable about its own regulatory scheme and that the federal government is unlikely to support a constitutional challenge to the Endangered Species Act are not recent developments.

Texas cannot claim that it was surprised that the Secretary's withdrawal of the proposed listing would be challenged as a justification for its less than timely response. For several years now, Save Our Springs Alliance has pursued litigation designed to force the Secretary to list the Salamander as endangered. That Save Our Springs Alliance would attempt to challenge the Secretary's reliance upon the Conservation Agreement was certainly predictable. Furthermore, Texas' involvement in the prior litigation left it fully aware of the facts and legal issues concerning the listing of the Salamander. Texas cannot claim that it required some three months to analyze the basis of the lawsuit

4

so that it could determine whether to intervene.

Texas essentially argues that it did not realize that the Secretary would fail to assert and defend Texas' interests to the same degree as Texas itself would, until after Texas had perused the complaint for some three months. In view of the long, politically charged and contentious history of this litigation, we find Texas' attempts to justify its delay unpersuasive. Accordingly, we conclude that the district court did not abuse its discretion when it denied Texas' motion to intervene as untimely, and the district court's judgment is therefore

AFFIRMED.[1]

---

[1]Texas' pending motion to stay further proceedings in the district court, which we originally determined to carry with the case, is now DENIED.